Jackie KLEINER

v.

The FIRST NATIONAL BANK OF ATLANTA.

Civ. A. No. 80–921A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Nov. 19, 1981.

---

Jerome J. Froelich, Jr., Kenneth P. McDuffie, Atlanta, Ga., for plaintiff.

Richard M. Kirby, Hansell, Post, Brandon & Dorsey, Richard M. Langway and Marilyn D. Britwar, Atlanta, Ga., for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This case is before the Court on Plaintiff's Second Motion for Leave to File an Amended Complaint. The proposed amended complaint, which is attached to the Motion, revises and restates Plaintiff's original complaint. It more clearly delineates Plaintiff's claims than did the original complaint. In addition, whereas the original complaint contained no counts under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), the first two counts of the proposed amended complaint are RICO counts. Also, the proposed sixth count of the amended complaint adds a contract cause of action.

This is not the first time the matter of amendment of Plaintiff's complaint has been before the Court. On December 10, 1980, when the Court ruled on Plaintiff's Motion for Partial Judgment on the Pleadings, it noted that Plaintiff's complaint did not contain a claim for breach of contract, although Plaintiff's brief then filed with the Court appeared to assume the inclusion of such a claim in the complaint. The Court specifically gave Plaintiff until December 25, 1980 to file an amendment adding a breach of contract claim. However, no such amendment was filed until the instant motion for leave to file. an amended complaint was filed on July 15, 1981.

In addition, on November 21, 1980, Plaintiff filed a motion for leave to amend his complaint to add two RICO claims. The Court denied this motion, finding that one of the proposed claims did not state a cause of action and finding that the other was not timely filed. Plaintiff filed a motion for reconsideration which was denied by the Court on July 15, 1981. On that same day, Plaintiff filed the instant Second Motion for Leave to File an Amended Complaint.

Plaintiff argues persuasively in his brief filed in support of his second motion that under the precedent of this Circuit, mere delay on Plaintiff's part in filing a proposed amendment to a complaint does not justify denying the amendment. Rather, Plaintiff argues it must be shown that Defendant would be prejudiced by allowing the amendment. Plaintiff cites *Bamm v. GAF Corp.*, 651 F.2d 389 (5th Cir. 1981). The Court accepts Plaintiff's argument, and indeed notes a recent decision to the same effect, *Dussouy v. Gulfcoast Inv. Corp.*, 660 F.2d 594 (5th Cir. Nov. 5, 1981).

The Court will first consider Plaintiff's attempt to add claims against Defendant under RICO. The Court's conclusion is that although Plaintiff's attempt to amend his complaint to add these claims may not be barred as untimely, such claims should nonetheless not be allowed given the Court's conclusion that no claims under RICO lie against the Defendant.

Plaintiff has asserted that the following facts are true: Plaintiff executed various notes to Defendant during the period from October 1978 through December 1979. Each of these notes was in the amount of $100,000.00 or more. The notes called for interest of 1% above the "prime rate," which was basically defined in the notes as the rate available to the Bank's most credit-

worthy commercial borrowers.[1] While the various notes were outstanding, the Bank mailed Defendant periodic interest statements reflecting the interest charged him— 1% above the Bank's published prime rate.

Plaintiff's theory, as made evident throughout this litigation, is that he actually paid to the Bank interest in excess of what the notes called for, payment having been made in reliance on the interest statements. He says that all he agreed to pay was 1% plus the rate charged by the Bank to its most credit-worthy commercial customers; now, however, he has learned or suspects that many of the Bank's commercial customers were charged much lower than those he was charged by the Bank based on its published prime rate. In essence, he asserts that the Bank's published prime rate is not in fact a measure of the cost of credit to the best commercial customers, as it had been represented to be. He contends the interest statements the Bank sent him and others similarly situated fraudulently overstated interest.

In previous filings with the Court, Plaintiff has made it clear that the complained of practice of making below prime loans to some but not all of the "most credit-worthy commercial customers" is not, in his view, limited to Defendant, or for that matter to Atlanta banks. · Indeed, in his originally filed complaint, he claimed Defendant was setting its own prime rates based upon published, albeit artificial, prime rates of New York banks. According to a newspaper article attached to Plaintiff's Response to Defendant's First Request for Production of Documents, filed July 16, 1980, and adopted by Plaintiff as being the basis for his contention that New York banks were setting artificially inflated prime rates, an unpublished survey by the Federal Reserve Bank for the first three months of 1980 showed that 66.98% of business loans made by large New York banks during that period were made at rates below the prime rate. The same article further indicated that the Banking Committee of the U. S. House of Representatives was concerned with the phenomenon of posting prime rates stated to be the cost of credit available to the most credit-worthy commercial borrowers, when in fact large corporate borrowers were obtaining credit at substantially lesser rates.

Plaintiff has also indicated his belief that the instant civil action is among the first, if not the first, action ever filed challenging the alleged phenomenon of artificially high prime rates.

Taking the referenced facts as asserted by Plaintiff to be true for the limited purpose of deciding Plaintiff's Second Motion for Leave to Amend, the Court now turns to consideration of how such facts would square with a possible cause of action under RICO. The definitional section of the Act, 18 U.S.C. § 1961, defines as "racketeering activity" any act which is indictable under various criminal code sections, including 18 U.S.C. § 1341, which is mail fraud. The mail fraud statute makes it a crime to mail matter which is intended to defraud or which constitutes a part of a scheme to defraud. Another part of RICO, 18 U.S.C. § 1962, makes "racketeering activity" a crime punishable with the fines and/or term of imprisonment set by 18 U.S.C. § 1963. Finally, 18 U.S.C. § 1964 provides civil remedies for those "injured ... by reason of *a violation of section 1962. . . ."* (emphasis added).

The two RICO counts Plaintiff seeks to add pursuant to the instant proposed amendment allege that Defendant Bank engaged in mail fraud when it mailed allegedly fraudulent interest statements to Plaintiff and others; that such mail fraud constitutes racketeering activity under the RICO; and that the excess interest paid by Plaintiff and others to the Bank pursuant to such fraudulent interest statements constitute damages collectible under the civil provision of the Act, 18 U.S.C. § 1964. Thus, Plaintiff argues that his claim literally fits within the parameters of RICO. Defendant has responded by arguing that the legislative history clearly indicates that Congress

---

1. The precise statement of interest to be charged and the definition of the "prime rate" was not the same in all of the notes; however, this is not relevant to the instant Order.

was concerned about organized crime when it passed RICO, not legitimate businesses. The Court finds that both Plaintiff and Defendant are correct in their respective contentions. Taken on their face, Plaintiff's claims do fit within the broad ambit of RICO, notwithstanding the fact that the legislative history abundantly demonstrates that Congress' concern was more narrowly directed.

■ The Court rules that Plaintiff is not entitled to assert the instant causes of action against the Bank under RICO, however. In so deciding, the Court first notes that RICO is basically a criminal act. The civil section of the Act indeed provides civil recovery, not merely for those injured by "racketeering activity" as defined in section 1961, but rather for persons injured "by reason of a violation of section 1962", the section making racketeering activity a crime. Thus, the Act clearly contemplates the civil penalties prescribed in section 1964 (treble the damages caused by the unlawful activity) as an additional weapon in the crime-fighting arsenal which is incidental to an actual or potential criminal prosecution.[2]

Although the banking practice Plaintiff complains of is allegedly widespread and known to the regulators of banks such as Defendant, to the Court's knowledge there have never been any prosecutions for such practice, at least not in this District. This fact is, of course, irrelevant to proper resolution of Plaintiff's non-RICO claims. However, it does mean that the practice Plaintiff complains of has not traditionally been treated as criminal in nature; i. e., it is not a recognized form of criminal activity. Given the serious nature of criminal charges, the Court does not think this determination should be made in the first instance by a civil jury but rather should emanate from traditions first established in criminal law.

■ The Court now turns to Plaintiff's request to add a contract cause of action. Noting that Plaintiff has changed counsel

and that Defendant is not surprised or prejudiced by the addition of this claim, the Court will grant Plaintiff's request to add this claim, even though there appears to be no excuse for Plaintiff's failure to meet the filing deadline previously set by the Court.

In summary, the Court GRANTS Plaintiff's Second Motion for Leave to File an Amended Complaint, except as to the request to add two counts under RICO, which request is DENIED.

---

**2.** It may well be that entitlement to the civil remedy of section 1964 should be conditioned upon a criminal conviction or at least an indict-ment. However, the Court need not reach this issue here.